**GULF REFINING COMPANY, Appellant,**

v.

**Isaac R. PRICE et al., Appellees.**

**No. 15622.**

United States Court of Appeals Fifth Circuit.

April 6, 1956.

Rehearing Denied May 17, 1956.

Melvin Evans, Frederick E. Greer, Shreveport, La., Archie D. Gray, Pittsburgh, Pa., for appellant.

Cullen R. Liskow, Lake Charles, La., Roger H. Doyle, Donald W. Doyle, New Orleans, La., for appellee.

Fred S. LeBlanc, Atty. Gen. of Louisiana, James R. Fuller, Sp. Asst. Atty. Gen. of Louisiana, John L. Madden, Asst. Atty. Gen. of Louisiana, H. M. Holder, Sp. Asst. Atty. Gen. of Louisiana, for State of Louisiana, amicus curiae.

Before BORAH and JONES, Circuit Judges, and DAWKINS, Sr., District Judge.

DAWKINS, Sr., District Judge.

Appellees, plaintiffs below, some fourteen in number alleging themselves to be residents of Louisiana, Illinois, Iowa and California brought this action claiming title to several hundred acres of property,[1] in the Parish of Plaquemines, Louisiana against Gulf Refining Company, appellant, a Delaware Corporation called Gulf. They alleged actual possession by defendant for more than one year, as required by the provisions of the Louisiana Code of Practice dealing with real actions, Articles 5 and 43, and that the value of the property in controversy exceeded the minimum jurisdiction of the court. Their claim of ownership was as " * * * sole and only heirs" of John Beckwith to whom plaintiffs alleged the State had issued patent No. 1965 on November 4, 1874, covering a larger area of several thousand acres belonging to the State at that time by virtue of its inherent sovereignty (beds of navigable bodies of water) when admitted to the Union in 1812. Petitioners prayed for judgment "recognizing petitioners as the true and lawful owners of said property and, as such, entitled to the full and undisturbed possession thereof and ordering said Gulf Refining Company to deliver possession of said property to petitioners."

On July 9th following, defendant, appellant, answered denying for want of information, the citizenship of plaintiffs, but admitting it was a corporation under the laws of Delaware. It also denied the value of the property was within the Court's jurisdiction. It responded to other articles of the complaint as follows: That Article IV alleging title in plaintiffs through the patent to Beckwith duly recorded in the conveyance records, stated only a conclusion of law, which defendant would neither admit nor deny. It then admitted Articles V through XII, wherein plaintiffs' relation to an acquisition under the Beckwith patent, as well as other alleged transfers were recited, but denied possession in itself of the property as charged in Articles XIII and XIV. Defendant then set forth at length its reasons for denial of possession[2]

1. "Lot 1 of Section 1, Lot 1 of Section 2, Lot 1 of Section 3, Lot 1 of Section 5, Lot 1 of Section 6, Lot 1 of Section 7 and Lot 1 of Section 8, all of Sections 14 and 15, Lots 2, 3 and 4 of Section 17, South Half of Section 18, all of Sections 19, 20, 21, 22, 23, 24 and 25, North Half of North Half of Section 26, Northwest Quarter of Northeast Quarter, Northwest Quarter of Southwest Quarter and Northwest Quarter of Section 27, all of Sections 28, 29, 30 and 32, Northwest Quarter of Northeast Quarter, Northwest Quarter of Southwest Quarter and Northwest Quarter of Section 33 in Township 19 South, Range 18 East in the Southeastern Land District of Louisiana, east of the Mississippi River."

2. "XIII. The allegations contained in Article XIII of plaintiffs' petition are denied and in this connection defendant shows that it is not in actual physical possession of any portion of Sections 22 and 27, of Township 19 South, Range 18 East, Plaquemines Parish, Louisiana; that it acquired a mineral lease designated as State Lease # 195 from Southern Sulphur Corporation by instrument dated September 18, 1936, a certified copy of which instrument is attached hereto and marked 'Defendant–1', which instrument conveys the rights of Southern Sulphur Corporation in *Sections 22 and 27 aforesaid, among other property:* that the successors in interest to Southern Sulphur Corporation are Mrs. Bessie Franzheim, et al., being the transferees in instrument dated November 17, 1953, certified copy of which is attached hereto and marked 'Defendant–2'; that pursuant to the provisions contained in the instrument hereinabove designated as 'Defendant–1' and particularly paragraph VI thereof, defendant has executed a reconveyance of all rights acquired by it under said instrument to the successors in interest of Southern Sulphur Corporation, as they appear from the instrument herein described as 'Defendant–2' and the heirs, successors and assigns of such parties, as more fully appears from instrument dated July 6, 1954, a certified copy of which is attached hereto and marked 'Defendant–3', such reconveyance being limited to the rights acquired by this defendant as aforesaid in Sections 22 and 27 of Township 19 South, Range 18 East, Plaquemines Parish, Louisiana." (Emphasis supplied.)

based mainly upon its alleged release of all rights it had formerly held in Sections 22 and 27 as lessee.

Defendant then denied "it has at any time been in *illegal* possession of any portion of Sections 22 and 27, Township 19 South, Range 18 East, Plaquemines Parish, Louisiana", (emphasis added) but admitted,

"* * * it has drilled wells in search of oil on said sections, which wells had been abandoned long prior to the filing of this action, and defendant has exercised no possession over said property since such abandonment." It also averred "* * * *It is not in possession of any portions of Sections 22 and 27, Township 19 South, Range 18 East,* *Plaquemines Parish, Louisiana, and that it has no interest in said property and is not claiming possession thereof or any interest thereon; and defendant formally disclaims any right to possession of said property or any interest therein."* (Emphasis supplied.)

Copies of "Defendant–1", "Defendant–2" and "Defendant–3" referred to in answer to Article XIII of the Complaint (Footnote No. 2) were attached and constitute a considerable portion of the transcript in this case.

On August 24, 1954, plaintiffs moved for summary judgment, contending there was "no genuine issue as to any material fact, all as shown by affidavits and documents hereto attached" [3] and prayed

3. The proof offered was a certified photostat of the patent to Beckwith dated November 4, 1874 under which plaintiffs claimed, conveying among other lands Sections 22 and 27 of Township 19 South, Range 18 East; (2) affidavit of plaintiff, Richard F. Price that on July 28, 1954 he made a personal inspection of Sections 22 and 27 involved here and found three structures thereon, No. 1 on Section 22, consisting of the usual supports for a producing oil well, on which there was a sign having a white background with the following in black letters: "Gulf Refining Company La. State QQ Lse. 195 Well No. 3, Sec. 22, T 19S, R 18E Serial No. 44862"; that within this structure the casing of a well protruded from the surface of the water and was topped by a "Christmas Tree"; that a second structure similar in all material respects to the first, "in a circular pattern" was found also on Section 22, designated as Well No. 4, both well casings protruding above a platform also topped by a "Christmas Tree" and bearing the "Serial No. 45232", the second structure "having a flashing red light" on top thereof; the third structure was similar to 1 and 2 and the fourth measuring approximately 100 feet long by 25 feet wide consisted of two clusters each also having red lights and a small wooden shack, a wooden platform with iron braces on four sides and a wooden platform on top eight to ten feet above the surface of the water. In a second affidavit dated August 17, 1954 the same affiant swore he was the owner of an undivided interest in the fee title of Sections 22 and 27 and was the lessee under a mineral lease thereon; that a portion of said land had been assigned to the California Company for $30.00 per acre who had since drilled fifteen producing wells thereon; that the land to which the plaintiffs in present suit are asserting title comprises approximately one thousand acres; that affiant had examined the records in the Conservation Office of the State, which showed monthly reports by defendant, copies of which were annexed showing 74,000 barrels of oil had been withdrawn since May 25, 1951 by the Gulf Refining Company; and finally that a .017708 interest "in this identical property" had been appraised in a suit in the State Court at $16,000.00 or approximately $146.00 per acre and that the lands involved in the present suit were worth "* * * greatly in excess of the sum of $3,000.00."

A third affidavit dated August 10, 1954 was by one Peter A. Huth, Manager of the New Orleans District of the Department of Conservation in charge of its records, that neither well No. 3 nor 4 on State lease No. 195, which embraces Sections 22 and 27, have been plugged or abandoned. Finally a certificate by T. M. Minefiele, Chief Engineer for the Department of Conservation, listing reports and attaching copies filed by defendants Gulf Refining Company, through December for each of the years 1951, 1952, 1953 and 1954, this suit having been filed on June 17, 1954.

Plaintiffs also filed as part of its proof in support of its motion for summary judgment a "relinquishment" or "quitclaim" to the State by the distributees

for judgment as demanded in its original complaint..

Thereafter, on September 8, 1954, Defendant moved to dismiss the motion for summary judgment, again averring as in its answer of July 9 that "* * * such possession as defendant has had of the property in controversy has been in the capacity of lessee, and defendant in its said answer has further disclosed the name and identity of its lessor, which the state law requires complainants to make parties to this case or that the suit should be dismissed." On September 14th defendant also filed opposition to the motion for summary judgment for the reasons (1) there was no jurisdiction of the subject matter, the value of the property involved not exceeding the sum of $3,000, (2) the affidavits and documents tendered by plaintiffs "were irrelevant and immaterial to any issue in the case * * *", (3) the record "affirmatively shows an indispensable party has not been brought into the action", (4) the records do not "disclose a justiciable controversy as to the ownership of the property", and (5) for these reasons "a motion for summary judgment is not au-thorized by Rule 56 of the Rule of Civil Procedure."

On the same day, September 14th, plaintiffs filed a motion to amend the complaint "in order to more fully show diversity of citizenship between all plaintiffs and defendant" as a basis for jurisdiction, disclosing plaintiffs were citizens of Louisiana, Massachusetts, Illinois, Iowa and California, while defendant is a corporation under the laws of Delaware.

In this state of the pleadings, the motion for summary judgment and for its dismissal were heard together September 15, 1954, complainants offering the affidavits and other documents attached to their pleadings (footnote No. 3) and calling attention to the various allegations in the complaint and answer, including especially the copy of the release and reconveyance by defendant to its lessor, Southern Sulphur Corporation, and the latter's stockholders, executed July 8, 1954, the day preceding the filing of the answer.

The matter was discussed at some length by opposing counsel and the Court, parts of which are quoted in footnote.[4] The case was taken under advise-

---

of the assets of the Southern Sulphur Corporation. Defendants assign, "all of their rights whatsoever in Sections 22 and 27, Township 19 South, Range 18 East." The document was dated July 23, 1954 or more than a month after the filing of its answer by the Gulf Refining Company, defendant.

On August 31, 1954 plaintiffs obtained from the court an order granting them leave to file all these documents in support of their motion for summary judgment, together with copies of the plats of said township by L. N. Polk and J. C. DeArmas, Civil Engineers, embracing the property sued for.

4. (Page 34 of the Record)
"Mr. Evans: (Attorney for Gulf Refining Company) May it please the court, opposing counsel has in my opinion, omitted the most salient feature of this case—the discussion of it. This case— In the first place, he designates this action as an action to assert title and to eject trespassers and a study of those, the allegations contained in that com-plaint do not make it clear as to whether he is asserting his ownership as such or whether he is asserting that defendant is in illegal possession. He makes both allegations it's true, but as to what is the real issue in this case—

"Now as lessee, this defendant in answering this petition, when it came to the allegations contained in article IV where he asserts petitioners as owners holding under one John Beckwith whom they acquired by patent No. 1965 from the State of Louisiana these lands by its inherent sovereignty and then six thousand four hundred and thirty nine acres, he doesn't—the defendant was put in this position, *not claiming to the land it had no right to assert ownership; it had no right to take the affirmative as to any rights and assert any rights on behalf of its lessor*. Now in article—*In answering articles 13 and 14, the defendants sets out very clearly that he has exercised possession over this property some months, as a matter of fact beginning some 21 months before, or 27 months before, and that its possession*

ment on the same day by the judge below and, on March 28, 1955, without opinion, he gave judgment in favor of plaintiffs, recognizing them "* * * to be the owners of the lands described in plaintiffs complaint and removing and annulling, *as against defendant* Gulf Refining Company, any claim or pretensions in and to any portion of said lands adverse to plaintiffs' title."

Defendant appealed and charges the following errors by the Court below:

(1) Holding that the subject matter in controversy exceeded $3,000.00;

(2) Holding that defendant's lessor was not an indispensable party and failing to sustain defendant's Motion to Dismiss;

(3) Holding that there was no genuine issue as to any material facts;

*had ceased some months prior to the filing of this suit.* (Emphasis supplied.)

"Now as a lessee—

"The Court: Well now how can it say that? How can it allege that when they had structures with signs on it saying that it's their property? It's still on the property.

"Mr. Evans: Your Honor, this counsel has stated that was in—these structures were in water. A question of Navigation is involved. Those structures are there under the requirements of the Federal Government pertaining to navigation and have nothing to do with the plaintiff's claim here as against us or our possession of the property.

"The Court: *Have you read the affidavit?*

"Mr. Evans: *Yes, sir.*

"The Court: *You mean to say a well with a Christmas tree on it is an aid to navigation?*

"Mr. Evans: No, sir, not at all. No, sir. But that is a matter that we have to take up with the, as far as the issues in his case are concerned, with the U. S. Engineers who supervise those matters.

"The Court: No, I don't think so. These people filed affidavits and it is incumbent upon you to file counter-affidavits.

"Mr. Evans: *May I make this statement to Your Honor that we do not deny that we have been in possession. We cannot deny, I mean as we appreciate it, that constructively or what is called civil possession was in us at the time this action was filed.* As far as that part of it goes—

"The Court: I thought you denied possession?

"Mr. Evans: We denied illegal possession, Your Honor, and we show that. We have attached to your answer a release of the lease under which we had conducted these operations in the past.

"The Court: I thought you began—At the outset you said that you had been in possession 27 months before this ac-

tion was filed. It seemed to me that the inference was that you were no longer in possession. Now you say that you admit that you were in possession.

"Mr. Evans: May I say in constructive civil possession but our possession in Louisiana, the possession of the Lessee, is the possession of the 'Lessor * * *.'

"Now we could not deny that we had at one time exercised possession over this property because of the operations which are admitted and we admittedly conducted, but we are not clear here as to just what the plaintiff is about, speaking about—he can't make out our defense. He is not entitled, under any rule of law, that we've been able to find—as is the matter of fact the jurisprudence in the law is settled that judgment cannot be rendered on ownership declaring the plaintiff the owner when the defendant names someone else and shows that this—the one under whom he claims is—as owner—is not a party to the suit. And having shown that we don't think we have to go any further. But the matter—

"The Court: *You don't claim at all, do you?*

"Mr. Evans: *Not ownership. No, sir, not ownership.*

"The Court: What do you claim?

"Mr. Evans: We claim that we had a lease and that we conducted operations under a lease and that our operations were not illegal. He charged our possession—

"The Court: You claim you still have a lease?

"Mr. Evans: *Not on the property* that's involved here, sections 22 and 27. Of course we had that. *Our lease covered that property up until this action was filed. Yes, sir, and it is our appreciation that as of that time, that would fix the respective—fix the issue as to value, jurisdictional amount and that sort of thing; as of the time the action was filed."* (All emphasis supplied.)

(4) Holding that the record disclosed a justiciable controversy of which the Court could or should take cognizance; and

(5) Holding that plaintiffs proved their ownership to the property described in the petition, and failing to hold that the proof showed the ownership of the property to be vested in the State of Louisiana.

## Alleged Error No. 1

■ As stated complainant offered the evidence documentary and affidavits above described in footnote No. 3 along with the pleadings. The value of the lands claimed by plaintiffs we think were thus proven, and appellant offered no evidence to the contrary. Defendant admitted it had drilled wells and removed oil from Sections 22 and 27 and that its producing structures were still on those sections bearing placards proclaiming its ownership at the time of the trial. It was also made clear that defendant's attempted release back to its alleged lessors of the lands in Sections 22 and 27, was executed between the time the complaint was filed on June 17, 1954 and served, and the filing on July 9th of the answer denying possession by defendant. In this state of the record it can scarcely be contended, if the amount in controversy was sufficient to give the Court jurisdiction when the suit was filed, that it was lost by the subsequent attempt of defendant to divest itself of interest in a part of the property. Hence we hold that the court below was correct in overruling the plea to the jurisdiction of the subject matter.

## Alleged Error No. 2

■ The appellant's claim of error, (based upon the absence of an indispensable party) is predicated upon the assumption that a lessor-lessee relationship is present in this case. This is not so. True, when the complaint was filed, the appellant had a right to answer, claiming possession as a lessee, and thus to avail itself of the right provided by Art. 43, La.Code of Practice, to require that the suit be litigated with its lessor, whomever that might be, and be dismissed from the suit. But the defendant elected not to appear in this action as lessee, but instead denied possession and disclaimed any title to the property in question. In all of the cases cited by appellant in support of its claim that its "lessors" were indispensable parties to the suit, there was in existence an alleged lessor-lessee relationship, whereas here, the record shows that appellant not only disclaimed any right to the land, but effectively re-leased its rights under a lease, and no lessor-lessee relationship exists between the defendant and any other party. It cannot be said that where defendants are not sued as and do not appear as lessees, that the rights granted by Art. 43 of La.Code of Practice can be availed of, or that any rights of any lessor can be affected if the litigation involves none of its lessees. See Lawrence v. Sun Oil Co., 5 Cir., 166 F. 2d 466, for discussion of Art. 43 and indispensable parties.

It is unnecessary to consider alleged errors Nos. 3 and 4 for the reason that they are disposed of by what is said above.

■ As to alleged error No. 5 we deem it sufficient to say that the court was in error in holding that plaintiffs proved their ownership to all of the property described in the complaint, for here the evidence shows only that plaintiff proved its prima facie title to the lands in Sections 22 and 27 against Gulf who was in possession of said sections but claimed no title thereto.

The judgment will, therefore, be reformed so as to recognize appellees to be the owners of the lands in Sections 22 and 27, Township 19 South, Range 18 East, Plaquemines Parish, Louisiana, as against appellant Gulf Refining Company, and removing and annulling as against appellant any claim or pretensions in and to any portions of said lands, adverse to appellees' title; and, as reformed, it will be

Affirmed.