99 So.2d 743 (1957)
234 La. 338
The CALIFORNIA COMPANY
v.
Isaac PRICE et al.
No. 42714.
Supreme Court of Louisiana.
April 1, 1957.
Rehearing Denied June 10, 1957.
Dissenting Opinion February 6, 1958.
*744 Jack P. F. Gremillion, Atty. Gen., George M. Ponder, First Asst. Atty. Gen., John L. Madden, Asst. Atty. Gen., John H. Tucker, Jr., Horace M. Holder, James R. Fuller, Sp. Asst. Attys. Gen., for appellants.
Charles D. Marshall, David J. Conroy, New Orleans (Milling, Saal, Saunders, Benson & Woodward), New Orleans, Cullen R. Liskow (Liskow & Lewis), Lake Charles, Roger H. Doyle, Donald W. Doyle (Doyle, Smith & Doyle), New Orleans, for appellees.
PONDER, Justice.
This is the second concursus proceeding brought by the California Company to ascertain the ownership of funds from oil wells drilled under the leases from the State of Louisiana and the Price-Beckwith group.
Previously, on May 23, 1951, the California Company instituted concursus proceedings to determine the ownership to funds derived from oil wells drilled by it in the waters of Grand Bay located in Sections 20 and 22 T. 19 S Range 18 E. It is alleged in the petition that the fund in petitioner's possession is continually accruing and that petitioner is entitled to deposit the money from time to time as it accrues in accordance with LSA-R.S. 13:4817. Petitioner further alleged "that additional producing wells may be brought in at other locations subject to the same controversy, and that petitioner is likewise entitled to deposit therein any monies accruing to the one-eighth royalty interest in said additional wells." It is alleged in the petition that the California Company is the owner of a lease executed by the Price-Beckwith group purporting to cover various water bottoms and in particular a large portion of Grand Bay in Plaquemines Parish which areas are also covered by an oil, gas, and mineral lease executed to the California Company by the State of Louisiana and that there is a controversy between these persons respecting the ownership of such water bottoms. The petitioner then prayed that it be authorized to deposit in the registry of the court the sums accrued referred to in the petition and that it be authorized to make further deposits from time to time as additional amounts accrue in its possession, representing the value of the one-eighth royalty interest in all oil, gas and other minerals extracted by petitioner from the water bottoms covered and included under the lease from Isaac R. Price, et al. and also lying within the limits of State leases 1785 and 1786 until all conflicting claims with respect to such minerals and the proceeds thereof have been finally and completely adjudicated.
*745 The state and its agencies in answer to the concursus proceedings averred that the producing wells are located in areas that now or formerly constituted the beds of Grand Bay and are a part of the property leased by the State of Louisiana to the California Company which portion of Grand Bay is owned by the State. The State averred that the Price-Beckwith group's lease was null and void insofar as it purported to include and cover the property owned by the State and leased to the California Company.
In their answer the State sought to limit the deposit in the registry of the court to production from wells described in plaintiff's petition and in the alternative they asked if additional deposits were authorized from other wells that the State be entitled to the funds as lawful owner of all areas described in the State's leases. It is averred in the answer that the State is the owner of this portion of Grand Bay because it is an arm of the sea and insusceptible of private ownership.
The Price-Beckwith group claimed ownership of that portion of Grand Bay by virtue of a patent executed by the state in favor of John Beckwith covering these lands and other lands executed on Nov. 4, 1874. It appears from the answer of the Price-Beckwith group that they contended that they were entitled to the royalty interest from all of the lands covered by the lease and the funds on deposit or which may hereafter be deposited derived from minerals produced from said lands.
Subsequently the California Company filed supplemental petitions asking the court to supplement the general order authorizing the deposit so as to apply to additional wells that were brought in since the filing of the original petition and located in Sections 17, 19, 20, and 22.
The Price-Beckwith group also took the position that their patent covering this portion of Grand Bay and other lands was unassailable by virtue of Act 62 of 1912, LSA-R.S. 9:5661 which provides that all proceedings brought by the State to annul patents must be brought within six years of the issuance of the patent, provided that suits to annul patents previously issued shall be brought within six years from the passage of the act.
Upon trial the district court held that Grand Bay was insusceptible of private ownership and gave judgment in favor of the State recognizing the State to be the owner of the funds on deposit and all additional funds that may hereafter be deposited, said funds representing the one-eighth royalty interest under the provisions of the State's lease described in Article III of the petition of the plaintiff, the California Company, and attributable to the production from the eight wells located in Grand Bay. On appeal this Court reversed the judgment of the lower court and held in the original opinion that the Price-Beckwith group was the owner of that portion of Grand Bay covered by the leases by virtue of the Beckwith patent and Act 62 of 1912 and gave judgment recognizing the Price-Beckwith group as the owner of the funds on deposit as well as all additional funds that may hereafter be deposited, representing the one-eighth royalty due under the provisions of the lease executed by the Price-Beckwith group to the California Company and attributable to the production from the eight wells situated in the bed of Grand Bay.
On rehearing this judgment was reinstated as the final judgment in the case. In the original opinion and the opinion handed down on rehearing it is apparent that the conclusion reached by the court was based on the ownership of that portion of Grand Bay covered by the leases in order to determine who was entitled to the one-eighth royalty provided for in the leases. See California Co. v. Price, 225 La. 706, 74 So.2d 1.
The concurring and dissenting opinions were also based on the ground that title was at issue.
*746 In the present concursus proceedings instituted on June 16, 1954 by the California Company impleading the State and the Price-Beckwith group, under the provisions of the same leases involved in the prior concursus proceedings, California Co. v. Price, supra, the California Company seeks to determine who is the owner of the one-eighth royalty deposited in the registry of the court derived from seven producing wells drilled by the California Company in that portion of Grand Bay covered by these same leases and located in Sections 17, 18, 20, 21 and 22.
In this suit the State again claims title to the property by virtue of that portion of Grand Bay covered by the lease being an arm of the sea, and therefore insusceptible of private ownership and contends that the Beckwith Patent is null and void. While on the other hand, the Price-Beckwith group relies on the same patent asserting that they are owners by virtue of the patent and Act 62 of 1912 which was passed on in the first Price case.
It appears that the Price-Beckwith group filed a plea of res judicata and judicial estoppel based on the ground that the issues presented in this second concursus proceeding were the same as presented in the first concursus proceeding involving the same cause of action between the same parties for the one-eighth royalty from production under the leases covering the same portion of Grand Bay.
After a trial on the merits of the case, the lower court sustained the plea of res judicata and judicial estoppel. The State has appealed.
Counsel for the State contends that title to only the well sites of the eight wells was at issue in the first Price case; that the opinion of the court constitutes no part of the judgment or decree; that the decree or judgment in the first Price case was limited to distribution of the funds procured from those eight wells which are located at different points in Grand Bay than the seven wells involved in the present concursus proceeding.
Article 2286 of the LSA-Civil Code provides:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."
Under the provisions of Article 539 of the Code of Practice:
"Definitive or final judgments are such as decide all the points in controversy, between the parties.
"Definitive judgments are such as have the force of res judicata."
In a concursus proceeding involving royalties deposited in the registry of the court it is necessary to determine the ownership of the land or royalty right in the land in order to determine the ownership of the funds; and the judgment in such a suit adjudicates title to the land or royalty right as between the defendants who appear and claim it adversely to each other. Amerada Petroleum Corporation v. State Mineral Board, 203 La. 473, 14 So.2d 61; Amerada Petroleum Corporation v. Case, 210 La. 630, 27 So.2d 431; Richardson & Bass v. Board of Levee Commissioners, 226 La. 761, 77 So.2d 32. This rule would apply to the present case because the parties herein are claiming royalties under the leases covering the portion of Grand Bay, the title of which was in dispute in the first Price case. In order to determine who was entitled to the funds derived from production under those leases it was necessary to determine who was the owner of the land or in other words who was the lessor.
The judgment in the first Price case insofar as it decrees the Price-Beckwith group to be the owners of the royalty proceeds is but an incident to the object of the litigation, viz. adjudication of title, because the *747 validity of the title would have to be determined in order for the court to decide who was entitled to the funds. Moreover, the decree in the first Price case recognized the Price-Beckwith group as the owners of the funds on deposit as well as all additional funds that may be deposited representing the one-eighth royalty due under the provisions of the lease described in Article I of the original petition of the plaintiff, the California Company. The lease referred to in Article I of plaintiff's petition is the Price-Beckwith lease.
It is the settled jurisprudence of this court that matters once determined by a court of competent jurisdiction, if the judgment has become final, can never again be called into question by the parties or their privies, though the judgment may have been erroneous and liable to certain reversal on appeal. Heroman v. Louisiana Institute, 34 La.Ann. 805; Buillard v. Davis, 185 La. 255, 169 So. 78; Metropolitan Bank v. Times-Democrat Publishing Co., 121 La. 547, 46 So. 622; Pitts v. Neugent, 187 La. 694, 175 So. 460.
Moreover, even if res judicata cannot be strictly applied the parties to this litigation are bound by judicial estoppel which extends to every material allegation or statement made on one side in the prior Price case and denied on the other which was determined in the course of the proceedings. Heroman v. Louisiana Institute, supra; Buillard v. Davis, supra; Succession of Fitzgerald, 192 La. 726, 189 So. 116; Quarles v. Lewis, 226 La. 76, 75 So.2d 14; Brown Land & Royalty Company v. Pickett, 226 La. 88, 75 So.2d 18.
The State seems to be under the impression that the common law doctrine of judicial estoppel is not recognized in this State but the cases herein referred to have recognized and applied that doctrine. The State is under the impression that the cases of Buillard v. Davis, supra, and Heroman v. Louisiana Institute, supra, were expressly overruled in the Quarles case. They rely on a footnote in the Quarles decision which they say overrules the above referred to cases. It is stated in the footnote that these cases appear to be out of line with the rest of the jurisprudence but it was never the intention of this Court to overrule those cases. In fact, the doctrine of judicial estoppel was specifically recognized in the Quarles case.
The concursus statute, LSA-R.S. 13:4811 et seq., was passed in order to avoid a multiplicity of suits and actions and it contemplates a proceeding leading to one judgment which finally adjudicates all issues between the parties. Amerada Petroleum Corporation v. State Mineral Board, supra; Placid Oil Co. v. George, 221 La. 200, 59 So.2d 120.
Insofar as the State's contention that only the well sites of the eight wells was at issue in the first Price case, it is pertinent to note that in the original petition filed by the California Company therein it asked that it be authorized to make further deposits from time to time from additional wells that may be brought in on adjoining property under the lease in different locations. In its answer the State in the first suit sought to restrict the decision to the wells set out in the original petition without avail and the court allowed the California Company by supplemental petitions to deposit the funds from wells in different sections than those listed in the original petition which were brought in after the suit was filed and issue joined.
As to the contention that the opinion of the court constitutes no part of the decree it is significant that the decree not only recognized the Price-Beckwith group as the owners of the funds on deposit but recognized, them to be the owners of all additional funds that may hereafter be deposited representing the one-eighth royalty due under the provisions of the Price-Beckwith lease.
Cases have been cited wherein it was stated that the reasons for rendering a decree do not form part of a decree and that the decree only may be set up as res judicata. *748 We have examined the cases cited containing this statement and find that no such statement was made in any concursus proceeding. The concursus proceeding is a statutory proceeding entirely distinct from other proceedings provided for by our law. Its purpose is to avoid a multiplicity of suits and to settle all of the issues raised therein as to the ownership of the funds.
In the present case both of the contestants are relying on a royalty interest provided for in the leases which cover that part of Grand Bay in dispute herein. In order to arrive at who was entitled to these funds, it was necessary to pass on the validity of the leases and the ownership of the land covered by the leases.
If the contentions urged herein were followed to their ultimate end it would require a concursus proceeding to be filed every time a well was drilled on the leased premises, which would in fact create a multiplicity of suits instead of carrying out the purpose of the statute to avoid a multiplicity of suits and to set at rest the issues between the parties for all times.
Since the issues in this case are an attempted re-hash of the issues raised and adjudicated in the first Price case, the pleas of res judicata and judicial estoppel are well founded.
After the appeal in this case had been reargued and submitted, the State filed a motion asking this Court to set aside the judgment of the lower court and remand the case in order that L. Bowman Kinchen and Mary V. Alford Kinchen be made parties to these proceedings and in the alternative that the case be remanded for the limited purpose of allowing evidence to be offered and a determination be had by the lower court as to whether or not these parties are in fact necessary and indispensable parties to this proceeding.
The California Company appeared herein and directed the court's attention to the fact that a notice of lis pendens had been filed in these proceedings and recorded in Plaquemines Parish on July 27, 1954 and that the deed to the royalty interest of the Kinchens was not recorded until September 9, 1954.
From an examination of the record, it appears that this proceeding was filed in the lower court on June 16, 1954 and that the California Company filed in the mortgage records of Plaquemines Parish on July 27, 1954 a statutory notice of lis pendens.
It appears that the Kinchens acquired a 1/160 royalty interest on June 1, 1951 from Isaac Price and Richard F. Price, to become effective on February 1, 1951 but the deed to this royalty interest was not recorded until September 9, 1954. The Prices and the Kinchens in answer to the motion to remand filed an affidavit in this Court setting forth that the Prices have been fully empowered and remain fully empowered to represent the Kinchens in all matters pertaining to their royalty interest and that settlements have been made to the Kinchens and shall continue to be made from time to time. This affidavit is signed by the Prices and by the Kinchens.
The State contends that the lis pendens is ineffective because it was not filed contemporaneously with the filing of the concursus proceeding. They rely on a statement in the case of Continental Securities Corporation v. Wetherbee, 187 La. 773, 175 So. 571, 582, to the effect: "In view of the purpose of Act No. 22 of 1904, as explained by this court in several cases, it was intended by the lawmakers, we think, that the notice of lis pendens should be filed and registered in the mortgage records contemporaneously with the filing of the suit affecting title to real estate."
We have examined that case and find that the lis pendens therein was not filed and recorded until after the judgment was rendered by the lower court. We find no fault with the decision in that case because certainly the lis pendens, having been filed after the judgment was rendered, was ineffective. The statement in the Wetherbee *749 case that the lis pendens must be filed contemporaneously with the suit does not conform to the provisions of LSA-R.S. 13:3541 because the notice must set forth the title and number of the suit which in many instances cannot be ascertained until the case is allotted and given a docket number. The notice in this case was filed long before the case was tried in the lower court and sufficiently notified all parties of the pendency of the suit. The purpose of the notice is to inform the world of a pending action affecting title to real estate and persons who have real rights that are not placed of record must assert such rights in the proceedings or be bound by the final judgment rendered in the case. As we see it, the Kinchens are bound by the judgment and therefore are not necessary parties to this proceeding. Moreover, they have signified by the affidavit filed in this court, their willingness to be so bound.
The State contends that the California Company being a mere stakeholder and not a party in interest, was without right to file the statutory notice. We are not impressed with this contention because it is encumbent upon the person instituting the concursus proceedings to notify all parties, within the knowledge of the applicant, claiming an interest in the fund. If the applicant should not be apprised of a claim because it was not placed of record, in order to be relieved of all liability it must necessarily file a notice of lis pendens. The motion to remand is denied.
On March 13, 1957 the State and its agencies filed in this Court a plea of res judicata and moved to remand the case in order that evidence be taken with reference to the plea of res judicata. The plea of res judicata is based on the contention that the State had been decreed the owner of the property in the case of Gulf Refining Company v. Price, 5 Cir., 232 F.2d 25. We have examined that case and find that it does not support the plea of res judicata. It merely recognized the Price-Beckwith group to be the owners of Sections 22 and 27, T. 19 S Range 18 E, located in Plaquemines Parish, and annulled any claim that the Gulf Refining Company had to any portion of the lands adverse to the Price-Beckwith group's title. The State was not a party to the suit and it appears that the Gulf Refining Company disclaimed any title or interest in these two sections of land that was the subject of the controversy. In that case the court gave summary judgment on the face of the pleadings and Gulf Refining Company was denied certiorari by the United States Supreme Court on January 21, 1957. See 352 U.S. 981, 77 S.Ct. 380, 1 L.Ed.2d 365. Accordingly, this plea of res judicata and this motion to remand are denied.
On March 15, 1957 the State moved to remand the case, reiterating the motions previously filed in the cause, or in the alternative to permit a re-argument of the case. It is further urged in the alternative that this Court maintain this concursus proceeding in status quo until a suit for slander of title now pending in Plaquemines Parish be decided, which it is averred will dispose of the questions presented in this litigation.
We have considered the previous motions filed in this case and denied them. There would be no purpose gained by permitting a re-argument of this case because this case has been argued and re-argued and held under consideration by this Court for almost a year and there is nothing set out in the motion but what has already been carefully considered by us.
We would not be justified in holding this case in status quo until the slander of title suit is tried and decided for the reason that the issues in this concursus proceeding have already been disposed of in the first concursus proceeding in the case of California Company v. Price, supra.
For the reasons assigned, the judgment of the lower court sustaining the pleas of res judicata and judicial estoppel is affirmed.
HAWTHORNE, J., concurs.
*750 FOURNET, C.J., and SIMON, J., dissent.
HAWTHORNE, Justice (concurring).
The holding of the majority of this court in California Co. v. Price, 225 La. 706, 74 So.2d 1, commonly called the first Price case, that the bed of Grand Bay, a navigable arm of the sea, is susceptible of private ownership is clearly wrong for the numerous reasons given in the dissenting opinions. The correctness of that holding, however, is not now before us, for in this case we are called upon only to review the correctness of a judgment of the lower court sustaining a plea of res judicata.
In the first Price case a majority of the court concluded that the Price-Beckwith group was entitled to the accumulated oil royalties from eight producing oil wells situated in Grand Bay. To determine the ownership of these royalties it was necessary for the court to determine the ownership of the bed of Grand Bay as between the State and the Price-Beckwith group, each claiming it adversely to the other. In holding that the Price-Beckwith group was entitled to the royalties from these eight wells the court concluded that the Beckwith Patent No. 1965 [225 La. 706, 74 So.2d 7] "was tacitly confirmed and rendered unassailable by the inaction of the State and the provisions of Act No. 62 of 1912". This conclusion could mean only that the ownership of the bed of Grand Bay as between the State and the Price-Beckwith group was vested in the latter, and that the lease granted by this group to the California Company was valid.
The instant case was brought to determine the ownership of the royalties accruing from additional wells which have been completed since the institution of the first Price case but which are located in Grand Bay within the area covered by Beckwith Patent No. 1965, already held by this court to be unassailable, and were drilled under the lease already held to be valid. Since it has been judicially determined by the majority in the first Price case that the Price-Beckwith group was entitled to the royalties there in dispute because of its ownership of that portion of Grand Bay covered by Patent No. 1965, and since the royalties here in dispute are from wells within the same area described in that patent and drilled under the same lease, that judgment is conclusive of the issue presented here.
As the trial judge so aptly says, "Every claim to title set up by the State in this case is a claim which the State either made or could have made in the prior suit, because all of these claims existed at the time of the first suit. The State therefore is bound by the first judgment even though some of its claims to title may have been omitted therefrom. Any other decision by this Court would lead to a ridiculous result. It would be absurd to say that the Price-Beckwith Group owns the lands covered by Patent No. 1965 for the purpose of determining the ownership of the royalties from eight wells located thereon, but does not own them for the purpose of determining the ownership of the royalties from seven additional wells located thereon."
FOURNET, Chief Justice (dissenting).
My inability to agree with the conclusion reached by the majority causes me much regret. Great as is my respect for my colleagues who subscribe to that view, I cannot, in good conscience, join them in extendingby the employment of the equitable maxims of estoppel and res judicata that, in my humble opinion, have no application here from either a legal or factual standpointthe decision of this court in the prior case of California Co. v. Price, 225 La. 706, 74 So.2d 1, 29,[1] to include the *751 funds now deposited in the registry of the court from entirely different wells drilled in entirely different sections of land than those involved in the former suit, and to also interpret the former holding as decisive of the title to all of the property claimed by the Beckwith group in Grand Bay. My conviction that the prior decision is unsound and should not be perpetuated remains unwavering, and, affecting as it does, the water bottom of an arm of the sea as well as all of the other navigable waterways of the state, "it takes no seer or prophet to foretell," as Mr. Justice Hawthorne so aptly observed in his able and exhaustive dissent in the former decision, "that as a result of this decision private individuals will successfully claim title under old patents to the beds of numerous bays on the Gulf, large lakes, etc., from which oil is being or will be produced," thus diverting into private hands untold millions of dollars derived from the sale of minerals produced from the beds of these waterways that would normally flow into the state treasury, and this at a time when there is such a crying need for new sources of revenue with which to properly operate the state government, its eleemosynary institutions and our schools.
That the prior opinion was erroneous and unsound was clearly demonstrated in the three dissenting opinions in the previous case, and particularly that of Mr. Justice Hawthorne, wherein he masterfully revealed that the majority view was predicated on neither sound law nor jurisprudence, but, instead, was based on a flimsy structure of obiter or pronouncements out of context, and by the misapplication of rules of statutory construction and interpretation, with total disregard of the express codal and statutory provisions of the state and the jurisprudence thereunder that had been in existence for more than 100 years, all of which he carefully analyzed and traced to their source showing that all navigable waters, and particularly arms of the sea, are vested in the state in its sovereign capacity and are to be held in trust for the people of the state and cannot be conveyed to private individuals by grant, sale, or express legislative authorization, much less by implication.
The fact that the title to submerged land vested in the state in its sovereign capacity, was held in trust for the benefit of all of the people, and can never be transferred to private individuals is a fundamental matter of sovereignty that pertains in all of the states of this union and throughout the entire world, was recognized in a very exhaustive opinion by the Supreme Court of the United States in Illinois Central Railroad v. State of Illinois, 146 U.S. 387, 13 S.Ct. 110, 118, 36 L.Ed. 1018, in 1892. In that case the Illinois Central Railroad, having been ceded by the legislature in 1869 the title of the State of Illinois in and to approximately 1,000 acres of submerged lands constituting the bed of Lake Michigan, which act was repealed by the legislature in 1873, contended the first act had vested it with title to the property and that title could not thereafter be revoked. The determination of that issue, according to the Supreme Court, posed the question "Whether the legislature was competent to thus deprive the state of its ownership of the submerged lands in the harbor of Chicago, and of the consequent control of its waters." In answering that question in the negative the court said: "A grant of all the land under the navigable waters of a state has never been adjudged to be within the legislative power; and any attempted grant of the kind would be held, if not absolutely void on its face, as subject to revocation," reasoning that a state "can no more abdicate its trust over property in which the whole people are interested, like navigable waters and soils under them, so as to leave them entirely under the use and control of private parties * * * than it can abdicate its police power in the administration of government and the preservation *752 of the peace." In conclusion the court held that "any attempted cession of the ownership and control of the state in and over the submerged lands in Lake Michigan, by the act of April 16, 1869, was inoperative to affect, modify, or in any respect to control the sovereignty and dominion of the state over the lands, or its ownership thereof, and that any such attempted operation of the act was annulled by the repealing act of April 15, 1873, which to that extent was valid and effective. There can be no irrepealable contract in a conveyance of property by a grantor in disregard of a public trust, under which he was bound to hold and manage it." (The emphasis has been supplied by me.)
Whether Beckwith ever secured a legal patent has never been considered by us inasmuch as the only matter for determination in a concursus proceeding is a prima facie showing of right to disputed funds deposited in the court. From matters brought to our attention by the Attorney General in the instant case, as well as from independent research, I am personally convinced Beckwith never secured a legal patent and that the one he did secure could under no circumstance be given any legal efficacy, even if it were to be conceded the state had authority and power to place the title to this arm of the sea in a private individual.
The documents on which the Beckwith claim is predicated were secured during the years 1873 and 1874, a turbulent period in Louisiana history when the state was ridden by the confusion and corruption that resulted when northern political adventurers poured into the south in the wake of the Civil War. The patent of November 4, 1874 (secured by John Beckwith, an exgeneral of the Union army), was signed by William Pitt Kellogg, native born to Vermont but a resident of Illinois who was sent to Louisiana by President Lincoln as a political appointee during the military regime and sought to gain control of the state in the election of November 4, 1872, that was the most disputed ever held in the state and the legality of which has not even to this day been determined. As a result Louisiana had two governors, two legislatures, and two sets of governing officials. Despite the fact he had no semblance of legal right or title to the office (indeed John McEnery was declared the winner by the board created at the 1872 legislature to canvass the election results), Kellogg was nevertheless installed by President Grant through the power of the Federal government to satisfy Republican partisan demands and maintained in office by sheer force of Federal troops, although Grant himself in 1875 characterized the election of 1872 as "a gigantic fraud." 29 Louisiana Historical Quarterly 394-495.
The documents Beckwith secured during 1873 and 1874 were clearly not signed by the legal governor of Louisiana. Additionally, they were secured upon his fraudulent assertion the property was swamp and marsh lands subject to tidal overflow within the intendment of Congressional acts granting such lands to Louisiana for reclamation by drainage,[2]as well as upon the further fraudulent assertion of subscribing witnesses that they were "well acquainted with the character of the soil in the" described land which "they have been over and examined * * * and from examination have ascertained and know * * * to be swamp and overflowed land," although a large portion thereof was not soil but this extensive arm of the sea that could never have been gone over and examined by these witnesses or ever reclaimed by drainage and was not, therefore, included in the grants from the government under the provisions of the Congressional acts, and all the more particularly so since title thereto was already in the state by virtue of its sovereignty. (The emphasis has been supplied by me.)
It is obvious, therefore, that the documents secured by Beckwith were without *753 legal effect of any kind for the following reasons: (1) No branch of the government, including the judiciary, can validly vest in a private individual title to the bed of a navigable waterway under the holding in the Illinois case; (2) the bed of Grand Bay was not included in the swamp land grants of the Federal government; (3) the documents were not signed by a legal governor; and (4) were procured in bad faith, through fraud and deceit.
Beckwith left Louisiana after a short stay[3] and neither he nor his heirs were again heard from or made any claim to the property until sought out in Illinois, Massachusetts and California by Price and associates in the 1940s after the region around Grand Bay became rich in mineral potential. But in the meanwhile, title to the property thus secured by Beckwith was adjudicated to the state in 1883 for nonpayment of the taxes for 1881 and 1882. There title remained until the legislature, by Act 258 of 1910, R.S. 9:1101, specifically placed in the state not the redeemable tax adjudicated title to this property, but the full title to the waters of and in all navigable and non-navigable "bayous, lagoons, lakes and bays and the beds thereof," that were not then "under the direct ownership of any person," the only such property excepted from these provisions being that (1) then under the direct ownership of the person (2) who had acquired it "in good faith." Section 2. Inasmuch as Beckwith procured this property in bad faith and neither he nor any other person then held it "under the direct ownership," the title being in the state by virtue of the tax adjudication of 1883, it is obvious that this act, under either or both of the stipulated conditions, vested once again in the state in its full and sovereign right and title. See State v. Board of Com'rs of Caddo Levee District, 188 La. 1, 175 So. 678. Of necessity, when Act 62 of 1912 was adopted two years later, giving the state six years within which to annul any patent it issued, it would have been an absurdity for the state to have instituted suit against itself to annul a patent that passed out of existence two years previously with the adoption of Act 258 of 1910. Furthermore, it was under no duty to do so since that act forever foreclosed whatever right of redemption Beckwith had under the tax adjudication, if, indeed, such right had not accrued under appropriate law in existence prior to 1910, and consequently cannot now be penalized for failing to do that which it was then, under no law or reason, required to do.
It is thus clear that our legislature under the holding by the United States Supreme Court in the Illinois case had not the competency or power to place ownership of and title to the submerged lands of Grand Bay in a private individual even by an outright legislative grant, much less by the implication read into the 1912 act by the majority when the first Price case was here. Yet this court at that time, as aptly observed in unequivocal terms by the author of the majority view here in his former dissent, by a strained and erroneous construction, as well as by an illegal interpretation of a general curative statute (Act 62 of 1912), held this statute had the effect of supplying title to the bed of this navigable waterway although [225 La. 706, 74 So.2d 17] "the patent, purporting to convey the arm of the sea when the law itself says that it cannot be owned, conveyed nothing, not even the shadow of a title, and the necessity for its annulment is immaterial for the reason that Act No. 62 of 1912 cannot be used as a vehicle of conveyance to supply title when not even a color of title existed." (The emphasis has been supplied by me.)
*754 Inasmuch as my learned associate did not repudiate any portion of this former dissent in the majority opinion he has written here, I take it he still entertains the view the former decision is totally wrong for the reasons set out in that dissent, as Mr. Justice Hawthorne has expressly done in his concurring opinion in the instant case. But I cannot follow the rationale of their view that because it is stated in the body of the opinion in the first Price case that the Beckwith Patent No. 1965 "was tacitly confirmed and rendered unassailable by the inaction of the state and the provisions of Act No. 62 of 1912," [74 So.2d 7], our decree in that case vested in the Beckwith group the title to the bed of Grand Bay so as to forever preclude the state from asserting any claim to the funds now on deposit in the registry of the court as the result of the present suit. The state can certainly not tacitly confirm by inaction an act it is prohibited from doing expressly and directly. And neither the legislature by act nor this court by decree can render a patent to the bed of an arm of the sea unassailable when the United States Supreme Court has expressly held "There can be no irrepealable contract in a conveyance of property by a grantor in disregard of a public trust, under which he was bound to hold and manage it." (The emphasis has been supplied by me.) [146 U.S. 387, 13 S.Ct. 118]
The fallacy of the reasoning of the majority lies in the fact that the "thing adjudged" in the former case was not title to the bed of Grand Bay nor any portion thereof, for one need only refer to the record in both proceedings and to the applicable law[4] to ascertain that the matter of the title to the bed of this navigable waterway is not involved in either of these suits. That it was not adjudicated upon in the former case can be readily ascertained by a reference to the decree that recognized the Beckwith group to be the "owners of the funds on deposit in the registry of the court, as well as to all additional funds that may hereafter be deposited * * * attributable to the production from the eight wells situated in the bed of Grand Bay" (located in Sections 20 and 22, T. 19 S.R. 18 E.), "until such time as this judgment shall become final and executory,"[5] although the Price-Beckwith group there specifically prayed that they recover judgment recognizing them "to be the owners of the fee title * * * to the lands described in Patent No. 1965, dated November 4, 1874, issued by the State of Louisiana" and that our judgment could under no circumstance have adjudicated the title to the property or have had the effect given it in the majority opinion since it failed to comply with the specific mandate of the law that "all final judgments of * * * the supreme court affecting the title to immovable property shall particularly describe the property thereby affected." R.S. 13:4202. See Harris v. Mount Zion Baptist Church, La.App., 198 So. 780; Emery v. Succession of Martel, La.App., 10 So.2d 267; Dupont v. Percy, La.App., 28 So.2d 359; Miller v. Arnold, La.App., 81 So.2d *755 181. The thing demanded in the instant suit is that the court adjudge the proper distribution of the funds now on deposit in the court's registry that are attributable to the production from seven wells located in Sections 17 and 19 of T. 19 S.R. 18 E. (The emphasis has been supplied by me.)
I fully recognize the decision in the former case, even though wrong, is, nevertheless, a final and definitive judgment of the court and that the "thing adjudged" there has the force of res judicata as to the funds that were on deposit in the court's registry up until the finality of that decision and which, as a matter of fact, were, after the finality of that judgment, withdrawn from the registry of the court and distributed to the Beckwith group in the claimed proportions, and that as to these particular funds neither the parties nor their privies can ever again be called in question.
That I am right in my conclusion that that judgment could be used as the basis for a plea of res judicata in no other respect is fortified by the fact that the California Company so understood our former decree as being limited strictly to the funds then on deposit in the court or that would be deposited in the registry of the court up until the finality of that judgment, is evident from the fact that it has since provoked this second concursus proceeding to have distributed under court decree the accumulated funds representing royalty interest in the production from the seven wells in Sections 17 and 19. Had it not so interpreted and understood the decree and judgment in the former case, its action in instituting this present proceeding would have been a vain and idle gesture.
The Attorney General advises the court he has filed an appropriate action in Plaquemine Parish that will ultimately decide the title to the bed of Grand Bay once and for all, and inasmuch as my two associates who dissented with me previously are still of the opinion the former case is wrong in toto, it would seem to me the request of the Attorney General that we remand this case to the lower court with orders that the funds here involved be held in status quo pending the outcome of that suit, or, at least, that we set the case for re-argument so that hewho has been elected since this case was filed and tried in the lower court, lodged here on appeal and the briefs written, and who only took office a few days before this case was first argued heremight be permitted to present fully his views on this vitally important ligation in which inherent and sovereign rights of the state are involved, was not only a most reasonable one, but a request that should also appear reasonable to my associates adhering to the majority view.
This request appears all the more reasonable when we consider that this court, as a branch of the state government, would thus be lending an ear to an Attorney General who is here exerting every effort and argument in his power in a valiant attempt to keep for the people of Louisiana those bottoms of the state's navigable streams that are rightfully owned by all of them and can never be alienated while, at the same time, the resources of his office are over-taxed in his desperate struggle in Washington to secure recognition of Louisiana's just claims to the bottoms of the Gulf of Mexico outside the three mile limit so rich in mineral potential.
The statement in the majority opinion that "There would be no purpose gained by permitting a re-argument of this case because it has been argued and re-argued and held for consideration by this court for almost a year, and there is nothing set out in the motion but what has already been carefully considered by us," (this is my emphasis), is unimpressive when considered in the light of the New Facts and New Law the Attorney General here calls to our attention that was Never brought to light in the previous case and Never considered by us, either then or now, as well as in the light of the historical background of the case which clearly shows the patent was void from its inceptioneven if the power of the state to convey was explicitand was *756 secured through fraud by Beckwith who, with his heirs, waited Sixty-Three Years without making any claim whatever thereunder and would not now but for the fact the Price group sought them out throughout the United States after the land in the region became extremely valuable mineralwise. I do not think such people should be permitted to use our courts of justice and to employ equitable maxims[6] prevailing in our civil law for the protection of the innocent to perpetuate and extend this fraud, particularly when it is obvious that on the merits, and without the shield of these technical rules they have no right in law or in equity to invoke, they would be without a scintilla of a legal claim or a shadow of a right.
I therefore respectfully dissent from the action of the majority in maintaining the pleas of res judicata and of estoppel, and also from their action in refusing to permit the Attorney General to reargue the case.
SIMON, Justice (dissenting).
After a careful study of the views expressed in the majority opinion I am convinced that it violates our fundamental principles of law and is in contravention of the public policy of this State. Therefore I cannot subscribe thereto but dissent for the reasons assigned by FOURNET, C.J., in his dissenting opinion as well as for the reasons set forth below.
At the outset let me state that it is my belief that the correctness of judgment of the trial court, sustaining and upholding the plea of res judicata and judicial estoppel, from which this appeal was taken, was one of the primary issues before us.
In order to maintain a continuity of thought relative to my views herein I must indulge to some extent in repetition of facts and law.
In 1951 The California Company had provoked a concursus proceeding, California Company v. Price, 225 La. 706, 74 So.2d 1, hereafter referred to as the "First Price Case", in the same court, naming the same claimants as those herein named, to determine ownership of proceeds derived from the sale of oil representing royalties from eight producing wells located at different points in Grand Bay than the seven wells involved herein.
In the instant suit prior to any appearance by the State, the Price-Beckwith Group initiated proceedings to have the suit dismissed, filing various pleas and motions, the gist of which was to the effect that the judgment in the First Price Case was res judicata or constituted an "estoppel by judgment" as to any claims by the State.
The trial judge overruled the contentions of the Price-Beckwith Group, holding that the decision in the First Price Case was not res judicata inasmuch as the decree in that case was limited to the distribution of the funds procured from the eight wells which are located at different points in Grand Bay than the seven wells here involved.
In due course the State filed its answer and other pleas, setting forth its claim to the funds deposited herein. The Price-Beckwith Group thereupon filed their answer asserting ownership to said funds and denying the right of the State thereto. By supplemental answer the Price-Beckwith Group reurged their plea of res judicata and estoppel, alleging the validity and effect of Patent No. 1965 as having been finally determined and adjudicated by judgment rendered in the First Price Case in their favor and against the State.
The foregoing plea of res judicata and judicial estoppel was referred to the merits. After trial of the issues as thus made up, the plea of res judicata and judicial estoppel *757 was sustained. The State duly prosecuted this suspensive appeal, and consequently, I believe that the only issue herein presented is whether the judgment rendered in the First Price Case as to the distribution of the funds derived from the eight wells involved therein conclusively and judicially set at rest the status of the funds derived from the seven wells here involved.
Our law of res judicata is stated with simplicity and precision by LSA-Civil Code, Article 2286 as follows:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."
The distinctness of the salient features of the law of res judicata, namely, the identity that must exist as to the thing demanded, cause of action and persons in the two suits, was emphasized by us in the leading case on this subject, State v. American Sugar Refining Co., 108 La. 603, 32 So. 965, as follows:
"* * * `The exception of the thing adjudged is stricti juris, and if there should be any doubt as to the identity of the things claimed, or of the persons claiming them, it cannot be maintained.' * * * `The plea of res adjudicata is without force, unless the object demanded in the former suit was precisely the same as that demanded in the action pending.' * * * `The only test as to the effect of a decree is its finality as to the matters embraced in it, and its having the requisites of article 2265 (2286) of the Civil Code.' * * * `The authority of res adjudicata takes place only with respect to what was the object of the judgment.' * *. Our court has never wavered, that we know of, in the rigid exaction of the three unities."
In Himel v. Connely, 195 La. 769, 197 So. 424, 427, we pronounced the general rule and exceptions thereto as follows:
"`The authority of the thing adjudged takes place only with respect to what was the object of the judgment.' Rev.Civ.Code, art. 2286.
"`The doctrine of the common law courts that res judicata includes not only everything pleaded in a cause, but even that which might have been pleaded, does not obtain generally under our system.' * * *
"There are decisions recognizing three exceptions to the general rule which we have quoted, * * *. One of the exceptions * * * is that in a petitory action the parties to the suit must assert whatever titles they have, and not hold back any claim for future litigation. * * * Another exception to the general rule has been made in suits for a partition or division of real estate. * * * And the third exception to the general rule has been made in suits for an injunction against the execution process. * * *." See, also, Hope v. Madison, 194 La. 337, 193 So. 666.
The foregoing authorities and others of equal force serve to show that we do not accept the common law doctrine of judicial estoppel or estoppel by judgment. We merely have admitted three exceptions to the question of different causes of action. Thus in cases of (1) petitory actions, (2) actions in partition and (3) injunctions against executions of judgments or writs of seizure and sale these prevailing exceptions to the general rule are recognized. However, in these instances where an exception is made, it is with reference to the question of different causes of action, and no exceptions are made as respects the thing demanded or the object in dispute. In other words, the three exceptions to Article 2286 of our LSA-Civil Code in order for the plea of res judicata to prevail must all relate to "cause of action" in cases where the object or thing in dispute and the persons to said suit are the same.
In the instant case the trial judge in his written reasons for judgment, on rehearing stated in part that it is unimportant *758 that a concursus proceeding may or may not fall technically in the category of petitory actions; and that the important thing is that title was the issue in the First Price Case, and the same title is again at issue between the same parties in the instant case. The trial judge further stated that "every claim to title set up by the State in this claim is a claim which the State either made or could have made" in the prior suit, because all of these claims existed at the time of the first suit.
I believe that it is of great importance to note that a concursus proceeding is an interpleader suit, its nature being as an equitable proceeding designed solely for the purpose of the protection of an innocent stakeholder. By no reasoning can such an equitable remedy be styled or termed a petitory action in any sense of the word. The petitory action is that which he who has the property of a real estate, or of a right upon or growing out of it, proceeds against the person having the possession, in order to obtain the possession of the immovable property, or the enjoyment of the rights upon it, to which he is entitled. Code of Practice Article 5. In determining whether a suit is a petitory action, the averments of the petition and answer must be construed in connection with their respective prayers, which fix the character of plaintiff's action and the nature of the relief sought by the defendant. Plaintiff must allege possession in the other party, and proof of adverse possession is a necessary part of plaintiff's case, because the petitory action can only be maintained against a party in possession. Foscue v. Mitchell, 190 La. 758, 182 So. 740; Whalen v. Davis, 200 La. 1066, 9 So.2d 424.
Therefore, I cannot agree with the learned trial judge, or with my esteemed colleagues, and find their reasoning in sustaining the plea of res judicata contrary to and directly in conflict with the law of this state as heretofore stated relative petitory actions as well as the law regarding the plea of res judicata, as expressed by us in the case of State v. American Sugar Refining Co., supra [108 La. 603, 32 So. 966], wherein we stated:
"The basic principle of res judicata is found in the necessity that a time should come when the litigation shall cease, in order that the decree of the court may be carried out. That is what the law concerns itself with, that the object of the judgment shall not remain eternally in suspense, but be delivered into the quiet and undisturbed possession of the successful litigant. This is what the Code means when it says that `The authority of the thing adjudged takes place only with respect to what was the object of the judgment.' The law by virtue of which the object of the judgment is delivered is no part of the object of the judgment. It is only one of the reasons for judgment, and res judicata does not take place with respect to the reasons for judgment, but `only with respect to what was the object of the judgment.' Res judicata deals, if we may express ourselves, with the decree of the court, as contradistinguished from the judgment of the court. To give it a wider scope than this is to confound it with stare decisis. The office and function and utility of res judicata is not to settle law questions, but to lend stability to a decree in order that such decree may have effect. If the second suit leaves the successful litigant in the first suit in the undisturbed possession of the thing decreed to be delivered in the first suit, there is no ground for res judicata. * * *"
It is well settled that the reasons assigned by a court and which influence the ultimate decree do not form part of the decree. It is the decree only that may be set up as res judicata. The opinion of a court is but an exposition of the motives upon which its decree is based. State ex rel. Puritan Co., Ltd. v. City of New Orleans, 169 La. 365, 125 So. 273.
Under this crystal clear principle of our jurisprudence, I cannot agree with the contention that the object or thing demanded *759 and adjudged in the First Price Case involved title to land from which oil had been extracted and that the ownership of the funds on deposit was merely incidental to the thing demanded. A mere reading of the decree of this court in the First Price Case shows that the only object adjudicated thereby was the ownership of the funds on deposit, no adjudication of title to real property being made.
I perforce recognize that the function and utility of res judicata is to render complete effectiveness and stability to judicial decrees. The thing adjudged and only that which has been adjudged must be definitive. It necessarily follows that the binding authority of res judicata must be limited to that which has been demanded, deliberated upon and adjudged in the first suit. If the thing demanded in a second suit or the object in dispute between the same parties be different from that which was demanded and decided in the prior suit, the plea of res judicata or estoppel by judgment cannot be successfully invoked.
It is clear to me that the thing demanded or the object in dispute in the First Price Case was money on deposit in the Registry of the Court, representing accrued royalties from eight wells located on specified governmental sections. The decree was definitive only as to the ownership of those funds. It contained no language affecting title to or describing with particularity any immovable property.[1] In the instant case, the object of the demand and the thing to be adjudged is the ownership of specific funds representing the production from seven wells located in governmental sections other than those involved in the First Price Case.[2] Manifestly, the object or the thing demanded and adjudged as between the parties in the First Price Case, ownership of specific funds, cannot be held to be the identical object or thing demanded in the instant case, nor a relitigation of the funds involved in the First Price Case. Therefore, I believe that the plea of res judicata and judicial estoppel should have been overruled, and the case remanded to the trial court for further proceeding and judicial determination on the merits.
I find a further reason to reverse the judgment of the trial court and remand this cause for a trial on the merits in that pending our deliberation, and prior to the delivery of the majority opinion, counsel for the "State" filed a motion praying that the judgment of the lower court be reversed and set aside and that the case be remanded to the trial court because of the lack of necessary and indispensable parties hereto with directions that L. Bowman Kinchen and Mary V. Alford Kinchen thereupon be made parties to this proceeding. In the alternative they pray that the matter be remanded to the trial court for the limited purpose of allowing evidence to be offered and a determination had by the trial court as to whether or not L. Bowman Kinchen and Mary V. Alford Kinchen are in fact necessary and indispensable parties to this proceeding, a decision of the case as it is now pending in this court to be held in abeyance awaiting a determination of this question.
In connection with this motion, it appears that Isaac R. Price and Richard F. Price, claimants in the "Price-Beckwith Group," executed a mineral royalty deed conveying a mineral royalty interest to L. Bowman Kinchen, the mineral royalty interest so conveyed being 1/160th of the whole of any oil, gas or minerals produced from the property described in the leases held by The California Company. This conveyance was executed on June 1, 1951 to be effective, however, as of February 1, 1951, the date of the first production had by The California Company from which the royalty *760 proceeds on deposit were derived. This instrument was recorded on September 9, 1954, in the conveyance records of the Clerk of Court of Plaquemines Parish.
It further appears that on January 22, 1954, in proceeding No. 17,513 of the docket of the Twenty-First Judicial Court for Tangipahoa Parish, in the suit entitled "Mary V. Alford Kinchen v. L. Bowman Kinchen" a judgment of divorce was rendered between said parties. On September 8, 1954 an agreement partitioning their community effects was entered into between the said parties wherein the 1/160th mineral royalty hereinabove referred to was divided equally between them.
The California Company, in response to this motion, neither admits nor denies the facts alleged, but submits a statement to the effect that after the institution of this concursus proceeding in the lower court, it recorded a notice of lis pendens in the mortgage records of the Clerk of Court of Plaquemines Parish on July 27, 1954; and that, because of the filing of said notice of lis pendens, it was not required to keep and maintain a check on the conveyance records of said Parish during the pendency of this suit.
Isaac R. Price and Richard F. Price also filed a statement in response to said motion, alleging the filing of the notice of lis pendens by The California Company and contending that the 1/160th mineral royalty interest accruing from the lands subject to this suit was only acquired by L. Bowman Kinchen and Mary V. Alford Kinchen by recorded title on September 9, 1954, and that because of said notice of lis pendens the said royalty vendees were not necessary parties to this suit but will be bound by the judgment herein rendered or any judgment to be hereafter rendered. They further inform us that the said mineral interest in said royalties transferred to L. Bowman Kinchen and Mary V. Alford Kinchen has been claimed by Isaac R. Price and Richard F. Price, as vendors, for and on behalf of the said L. Bowman Kinchen and Mary V. Alford Kinchen; and that whatever amounts were due to the said Kinchens out of the funds deposited in the registry of the court will be received by said Isaac R. Price and Richard F. Price and will in due course be paid by them to their royalty vendees.
The case of Jamison v. Superior Oil Co., 220 La. 923, 57 So.2d 896, 897, involved the cancellation of an oil, gas and mineral lease. The sole defendant named therein was the owner of a one-half interest; the other one-half was owned by a corporation through its trustee. Neither the corporation nor its trustee were made parties to the suit. However, since their leasehold interest would be greatly affected by the decree demanded by plaintiffs we accordingly remanded the case to permit the impleading of any necessary party or parties and reserved to all litigants the right to file appropriate pleadings and to introduce evidence material and relevant thereto. With Justice Hamiter as the author of our opinion, we held:
"It is well established that every person who may be affected by a decree must be made a party to the suit, because no one should be condemned without a hearing. Heirs of Burney v. Ludeling, 41 La.Ann. 627, 6 So. 248; Succession of Todd, 165 La. 453, 115 So. 653; Commercial National Bank in Shreveport v. Haas, 182 La. 502, 162 So. 57. And where a lack of necessary parties is apparent the court of its own motion may take cognizance of the defect; it cannot proceed properly without such parties. Ashbey v. Ashbey, 41 La.Ann. 138, 5 So. 546; Succession of Todd, supra; De Hart v. Continental Land & Fur Company, Inc., 196 La. 701, 200 So. 9; Bologna Brothers v. Stephens, 206 La. 112, 18 So.2d 914; Douglas v. Haro, 214 La. 1099, 39 So.2d 744."
The elementary and axiomatic principle of law enunciated in the case of Heirs of Burney v. Ludeling, supra, is that all parties in interest who may be affected by a decree, or whose interest is directly involved must be made a party to the suit.
*761 In that instance we remanded the case so that all of the various parties to sales and contracts involved therein would be cited and made parties defendant because, in their absence, no decree could be rendered affecting them.
In the Succession of Todd, supra, after giving full recognition to the principle announced in the Ludeling case, supra, and after noting that all necessary parties defendant were not made parties to the suit, we held that the court, may even ex proprio motu, notice the defect for it cannot proceed properly without such parties. We observed that wherever a decree may affect the rights of others that the elementary principle announced in the Ludeling case, supra, was applicable.
In Commercial National Bank in Shreveport v. Haas, supra, with Chief Justice Fournet as its author, we recognized the principle that the record owner of realty or a real right is a proper party to all suits involving the ownership thereof and again sanctioned the elementary principle that one who may be affected by a decree must be made a party to the suit and that no one should be condemned without a hearing.
In the case of Horn v. Skelly Oil Co., 221 La. 626, 60 So.2d 65, plaintiff failed to name, cite or join the Federal Land Bank as an owner of a mineral interest as a party defendant because its mineral servitude had allegedly prescribed. With Justice McCaleb as the author we held that the question whether the mineral reservation was a mineral servitude or that such mineral right had been lost by reason of non-production during its ten-year existence could not be properly adjudicated without the joinder of the Federal Land Bank as a party to the suit; that inasmuch as the rights of the Federal Land Bank were affected it was an indispensable party to the litigation. Though the failure to join the Federal Land Bank as a party was not raised in the lower court or before us, we considered this of no moment as this court on its own motion may take cognizance of the absence of indispensable parties. Under these circumstances and giving due recognition to the principles announced therein we annulled and set aside the judgment rendered by the trial court and remanded the case so as to permit the impleading of necessary parties, rather than dismiss the suit.
In the instant case it is admitted that L. Bowman Kinchen and Mary V. Alford Kinchen acquired a 1/160th mineral royalty interest from Isaac R. Price and Richard F. Price, by deed dated June 1, 1951, and made effective as of February 1, 1951. The said vendors not only admit said transfer but acknowledge the ownership thereof in L. Bowman Kinchen and Mary V. Alford Kinchen. Further, The California Company has continued to deposit in the registry of the court funds which have accrued and which are attributable to the 1/8th royalty since September 9, 1954, the date of the recordation of the mineral royalty deed in favor of L. Bowman Kinchen and Mary V. Alford Kinchen, with no intimation or attempt to give recognition to any interest or claim the said vendees might have and therefore implead them as parties to this proceeding.
It is significant that despite the fact that Isaac R. Price and Richard F. Price have conveyed the mineral royalty interest to L. Bowman Kinchen and Mary V. Alford Kinchen they filed their answer in concursus, alleging and pleading that they were in fact the owners of said interest, notwithstanding their actual knowledge that L. Bowman Kinchen and Mary V. Alford Kinchen, by virtue of said deed, owned a portion thereof.
In the case of Placid Oil Co. v. George, 221 La. 200, 59 So.2d 120, 123, we said: "Act 123 of 1922, under which this concursus was instituted, was enacted for the purpose of avoiding a multiplicity of suits, and it contemplates a proceeding leading to one judgment which finally settles all issues between all of the parties. The whole controversy is over the money, deposited, and none of the claimants has the *762 right to obtain a judgment in reconvention against the depositor. Hennington v. Petroleum Heat & Power Co. of Louisiana, 194 La. 188, 193 So. 583; Transo Investment Corporation v. Oakley, La.App., 37 So.2d 560. For the proceeding to lie a plaintiff must stand indifferent toward the claimants merely as a stakeholder. 30 American Jurisprudence, verbo Interpleader, Section 8. The provisions of the statute cannot be availed of when a sum equal to the amount deposited may be owed to more than one person. Transo Investment Corporation v. Oakley, supra. All of this is clearly indicated by Section 1 of the statute, LSA-R.S. 13:4811, when it provides that after making the deposit in the registry of the district court the plaintiff shall be relieved of all liability for the payment of said money." (Underscore ours.)
In view of the foregoing I believe that L. Bowman Kinchen and Mary V. Alford Kinchen are necessary and indispensable parties to this proceeding. The very purpose and spirit of concursus proceedings is to avoid a multiplicity of suits. It contemplates "a proceeding leading to one judgment which finally settles all issues between all parties." Manifestly, unless all adverse claimants to the 1/8th royalty here involved are cited, heard and their rights determined, a judgment as respects The California Company will not be final and definitive. This is equally true as respects the rights of other parties who may be properly named the owners of an interest in the funds. The California Company is a mere stakeholder in these proceedings and, necessarily, once it deposits the funds to be distributed it is relieved of all liability for the payment of said money so deposited. However, this absolution of liability can be true only if all adverse claimants or persons holding adverse interest have been named and cited as party claimants. Should an adverse claimant be omitted the purpose of concursus proceedings to eliminate a multiplicity of suits will be defeated.
The California Company and the Messrs. Price respectively call our attention to the recordation of the notice of lis pendens filed by The California Company on July 27, 1954 in connection with this concursus proceeding instituted on June 16, 1954. Messrs. Price contend that since the mineral royalty deed in favor of L. Bowman Kinchen was recorded on September 9, 1954, subsequent to the filing of the notice of lis pendens on July 27, 1954 that L. Bowman Kinchen and Mary V. Alford Kinchen are not necessary parties to this suit but are and will be bound by the judgment herein rendered or any judgment to be hereafter rendered. I know of no law or jurisprudence relied upon by the Messrs. Price in support of this contention, nor do they cite any.
Act 22 of 1904, LSA-R.S. 13:3541-3543, declares that the filing of notice of lis pendens and having the same registered in the mortgage records of the parish has for its precise purpose the giving of notice to all the world that the plaintiff claims the property involved in the suit, and thus charges everyone, however innocent, with knowledge of that fact, with the ensuing consequence that one then purchases at his peril, even though there is no outward sign of defect in the title of his vendor. Richardson Oil Co. v. Herndon, 157 La. 211, 102 So. 310. Prior to the enactment of the above statute, LSA-Civil Code Article 2453 provided the mere filing of a suit affecting title to real property constituted constructive notice to all the world that the plaintiff claimed the property. Under LSA-R.S. 13:3541-3543, the mere filing of a suit is no longer held to be constructive notice. The filing of a notice of lis pendens and the registration thereof is required but subserves precisely the same purpose as did the filing of the suit under LSA-Civil Code Article 2453.
I know of no legal ground why the filing of a notice of lis pendens by The California Company can defeat and make inapplicable the elementary principle that every person who may be affected by a decree must be made a party to the suit, and that no one should be condemned without a hearing, especially insofar as this principle operates *763 in favor of a party having an interest prior to the filing of the notice of lis pendens. The filing of a notice of lis pendens operates as notice only to those who purchase the property or interest involved in litigation after the suit has been filed and places them on guard of the existence of such litigation. Thereafter, if they deal with the property involved they do so at their peril. Thus the lis pendens statute contemplates and effects such conduct on the part of third persons who deal with the property or interest thereof after the filing of the suit and the notice of lis pendens.
In the instant case, however, the royalty mineral interest of L. Bowman Kinchen and Mary V. Alford Kinchen is shown to have been acquired long prior to the instituting of this suit and the recordation of the lis pendens notice and hence I believe it cannot be held that such notice affects their legal rights one iota.
The contention that the mineral royalty interest of the Kinchens "was only acquired by recorded title on September 9, 1954" is not pertinent under the particular circumstances of this case; and the vendors cannot plead the obvious delay of recordation under our law. Revised LSA-Civil Code Article 2442 provides that the sale of any immovable shall have effect against creditors of the parties and their persons in general only from the day such sale was registered according to law. But this defect of registering shall not be pleaded between the parties who shall have contracted in such act, their heirs or assigns, who are as effectually bound by a sale made under private signature, as if it were by an authentic act. The fact that the transfer of the royalty interest was by authentic act, the failure of immediate recordation does not affect the rights of the parties or signatories thereto.
In a further attempt to defeat the motion to remand Isaac R. Price and Richard F. Price have attached to their answer an affidavit executed by them together with L. Bowman Kinchen and Mary V. Alford Kinchen to the effect that Isaac R. Price and Richard F. Price "have been fully empowered and remain fully empowered, in their own names, to represent L. Bowman Kinchen and Mary V. Alford Kinchen in all matters pertaining to said royalty interest in the aforementioned litigation and that appearers have made and shall continue to make settlements from time to time." I cannot fail to observe the significance of the fact that this affidavit was signed and executed on January 5, 1957, three days after the filing of the motion to remand.
I believe the obvious answer to the purpose posed by this affidavit is that a party cannot hold himself free from pending litigation and await the rendition of a favorable judgment in the trial court and then, and only then evidence a willingness to answer the same and be bound thereby. To permit such procedure immediately raises the question as to whether or not a similar election would have been made had the judgment of the lower court been otherwise or contrary to the interest of the affiants. The answer to this question is instantly obvious to me.
In my opinion it being conclusively shown that the Kinchens are the owners by authentic deed of a specific and express mineral interest acquired by them on June 1, 1951, effective as of February 1, 1951, and that they are under our law and jurisprudence necessary and indispensable parties to this proceeding, and the case should have been remanded to permit the impleading of any necessary party or parties, with the right being reserved to all litigants to file appropriate pleadings and to introduce evidence material and relevant thereto.
NOTES
[1] This decision was by a divided court. The majority view on original hearing was written by Mr. Justice Hamiter. On rehearing Mr. Justice McCaleb was the organ of the court, and he was joined by Mr. Justice Hamiter and Mr. Justice Moise. Mr. Justice LeBlanc concurred only. Mr. Justice Ponder, Mr. Justice Hawthorne, and I all dissented with individually written views.
[2] 28 Louisiana Historical Quarterly 277-325.
[3] The state contends, and furnishes documentary proof in support thereof on this hearing, that Beckwith's fraud was induced by a desire to secure all land through which a canal was being proposed for passage to the Gulf from the Mississippi river, and that he left the state and abandoned this land when an alternative plan for construction of the Eads at the river mouth was adopted as the most feasible one for opening the lower reaches of the river to water commerce through the Gulf.
[4] R.S. 13:4811, so far as here pertinent, provides: "Whenever any * * * corporation * * is in possession of any money, which is claimed by two or more persons * * * then such * * * corporation * * * may deposit it in the registry of the district court having jurisdiction * * * and shall thereafter be relieved of all liability for the payment of the money, on complying with the requirements set out in R.S. 13:4811 through 13:4817." The application depositing the money in the court must set out the manner in which the applicant came into possession of it, the names of persons claiming interest therein (R.S. 13:4812), who must answer making claim to the money (R.S. 13:4813), the one prevailing being recognized as the "successful litigant for the funds deposited." (Emphasis supplied by me.)
[5] It is obvious from the provisions of R.S. 13:4811 through R.S. 13:4817 as well as from the decree itself, that our former decree could have been res judicata only as to the funds actually on deposit until the finality of that decision, and could not even be res judicata as to additional funds from these same wells accruing after the finality of the judgment.
[6] This is particularly true when we consider that neither the plea of estoppel nor the plea of res judicata is favored in the law and is strictly construed, and, further, that our jurisprudence specifically holds a plea of estoppel can never be used to supply title.
[1] LSA-R.S. 13:4202: "All final judgments of district courts, courts of appeal and the supreme court affecting the title to immovable property shall particularly describe the property thereby affected."
[2] Standard Oil Co. of Louisiana v. Futral, 204 La. 215, 15 So.2d 65.